# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:10CR00011 |
| v. | ) | **OPINION** |
| | ) | |
| **RICHARD LEE TAYLOR**, | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Ashley B. Neese, Assistant United States Attorney, Abingdon, Virginia, for United States; Nancy Dickenson, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

In this prosecution for possessing and receiving child pornography, I set forth the reasons for a sentence below the guideline range.

I

The defendant, Richard Lee Taylor, pleaded guilty without a plea agreement to a two-count indictment. Count One alleges that on October 29, 2010, Taylor knowingly received and attempted to receive child pornography in violation of 18 U.S.C.A. § 2252 (a)(2) (West 2000 & Supp. 2009). Count Two alleges that on that same day Taylor knowingly possessed and attempted to possess child pornography in violation of 18 U.S.C.A. § 2252(a)(4)(B) (West 2000 & Supp. 2009). Under the

Sentencing Guidelines, the defendant's advisory sentencing range is 151 to 188 months imprisonment. There is a five-year statutory mandatory minimum term of imprisonment applicable to Count One. 18 U.S.C.A. § 2252A(b)(1) (West Supp. 2009).

While the court must begin the sentencing process by "correctly calculating the applicable Guidelines range," *Gall v. United States*, 552 U.S. 38, 49 (2007), I may reject a sentence within the range "because a sentence within the Guidelines fails to reflect the other [18 U.S.C.] § 3553(a) factors or 'because the case warrants a different sentence regardless.'" *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)).

In imposing a sentence, the court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as

> the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2009). The Fourth Circuit has characterized these statutory purposes in summary form as follows: to <u>punish</u> the defendant, to <u>deter</u> him and others from future crimes, to <u>incapacitate</u> the defendant

in order to protect the public, and to <u>rehabilitate</u> the defendant. *United States v. Raby*, 575 F.3d 376, 380 (4th Cir. 2009). Accordingly, the court is required to impose a sentence "sufficient, but not greater than necessary," to comply with these purposes. 18 U.S.C.A. § 3553(a).

The court must explain the reasons for its sentence, regardless of whether the sentence is above, below, or within the advisory guideline range. *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009). This explanation must contain an "'individualized assessment'" based on the particular facts of the case before [the court]." *Id.* (quoting *Gall*, 552 U.S. at 50). Moreover, "a major departure [from the guidelines] should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50.

I find that a sentence within the advisory guideline range in this case does not reflect the § 3553(a) factors and the circumstances warrant a different sentence.[1]

---

[1] The court must "state in open court" its reasons for the sentence, 18 U.S.C.A. § 3553(c) (West Supp. 2009), and I recited the reasons that follow orally at the defendant's sentencing.

II

The facts are as shown by the Presentence Investigation Report, the mental health evaluation that is part of the record, and by the evidence received at the sentencing hearing.

Taylor is 38 years old and has never been married. He was an infant when his father was killed in an accident, and since then he has lived with his widowed mother, except for one brief period when he lived and worked at a state residential vocational school.

Taylor was diagnosed with attention deficit disorder when he was 10. Records show that he was exhibiting "maladaptive personality traits with seclusive and autistic behavior." (U.S. Bureau of Prisons, Forensic Report 2.) When he was 16, he began therapy at a public mental health clinic after being bullied and "beaten up a lot" at school. (*Id*.) While in school he was enrolled in special education classes and was apparently dyslexic. He eventually quit school after the ninth grade, but later did receive his GED while attending the vocational school. He continued treatment at the public mental health center, and was evaluated at age 21 as being isolative, not maintaining adequate hygiene, experiencing insomnia, and lacking motivation. He was diagnosed with depressive and anxiety disorders. At age 24 he began receiving Social Security disability benefits because of his mental impairments.

Taylor has had only one regular job, which lasted for two or three years before he began receiving disability benefits. He does not drive. Eight years ago he fathered a child with a woman who visited him at his home when his mother was away at work. Taylor's mother obtained custody of the child, who is autistic. There is no evidence that Taylor has ever molested his son and it appears that they have a proper loving relationship.[2]

After the charges in this court, Taylor was committed to the U.S. Bureau of Prisons for a mental health evaluation. He tested intellectually in the average range. His personality profile was found to be "similar to that of other individuals who report significant depressive symptoms, including sad mood, feelings of worthlessness, hopelessness, and personal failure." (*Id.* at 6.) The Bureau of Prisons processionals opined Taylor to be competent and recommended sex offender treatment.

Taylor has no prior criminal history and there is no evidence that he has ever attempted actual sexual contact with a child.

After a police investigation revealed that an Internet account in the name of Taylor's mother was in receipt of possible child pornography, a search warrant was

---

[2] Taylor's mother had the boy examined by a physician for any signs of sexual abuse after Taylor's arrest.

obtained and a computer seized from Taylor's home. He then admitted to police that he had become "hooked" on child pornography and had been downloading it for over two years. A forensic examination of the computer located at least 28 child pornography videos. Pursuant to U.S. Sentencing Guidelines Manual ("USSG") § 2G2.2 cmt. n.8 (2010), each video is considered to have 75 images. The defendant was thus held accountable under the Sentencing Guidelines for possessing 2,100 images of child pornography, which increased his Adjusted Offense Level by five levels, *see* USSG § 2G2.2(b)(7)(D) (2010), producing a Total Offense Level of 34.

The government has requested a sentence within the guideline range, while the defendant seeks a sentence below that range, based on his history and characteristics and the purported unwarranted severity of his guideline range.[3]

The law rightly condemns child pornography. Downloaders of child pornography are severely punished in part to try to limit the breadth of this vile

---

[3] Some courts have declined full or even limited deference to the guideline ranges in child pornography cases because of the perceived severity of the guidelines and their origin in congressional mandate, rather than in Sentencing Commission empirical research. *See, e.g., United States v. McElheney*, 630 F. Supp. 2d 886, 895-96 (E.D. Tenn. 2009) (finding that guidelines are entitled to less weight); *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1100-07 (N.D. Iowa 2009) (categorically rejecting guidelines); John Gabriel Woodlee, Note, *Congressional Manipulation of the Sentencing Guideline for Child Pornography Possession: An Argument For or Against Deference?*, 60 Duke L.J. 1015, 1016 (2011). I do not rely on that basis for a variance in this case, but rather on the defendant's particular history and characteristics. It is clear, however, that "[D]istrict court judges are increasingly unwilling to follow the . . . Guidelines when imposing sentences for possession of child pornography." *Id*.

market. Moreover, "[l]ike the producers and distributors of child pornography, the possessors of child pornography victimize the children therein." *United States v. McDonnell*, No. 09-15038, slip op. 7 (11th Cir. Jan. 28, 2011). It is important to deter others who may be tempted to partake, since viewing is hard to detect and may be believed to be harmless by some consumers. While the particular images downloaded by Taylor are horrible,[4] all use of children in this way is beyond the pale.

On the other hand, I am required by statute to also give individual consideration to the history and characteristics of the defendant in fixing a sentence.

By statute, Taylor must be sentenced to at least five years in prison. Because of his personality traits, this lengthy prison term will be more severe and difficult for him than other inmates. He is likely, because of those traits, and because of the nature of his crimes, to be victimized and to suffer more intensely the conditions of prison life. Moreover, a more severe sentence is less indicated in Taylor's case because I will sentence him to an extended term of supervision following prison, during which he will be subject to the court's strict Sex Offender Conditions, including registration as a sex offender, and ongoing sex offender treatment. These conditions will make it less likely for him to reoffend.

---

[4] The government has submitted a sample of the videos found on Taylor's computer.

Further, because of Taylor's mental impairments and life-long social isolation, he is less likely to have appreciated the wrongfulness of his conduct, which bears on his relative culpability.

Finally, while I fully appreciate the government's arguments concerning the seriousness of these offenses, I do not think that any reasonable observer of a five-year term in a federal prison would believe that it would not deter others from similar conduct or reflect the seriousness of Taylor's crimes.[5]

III

For these reasons, I will sentence the defendant to a total term of five years imprisonment, to be followed by a 10-year term of supervised release.

DATED: February 1, 2011

/s/ JAMES P. JONES
United States District Judge

---

[5] The median sentence for similar offenses in fiscal year 2009 in federal district courts for those defendants, like Taylor, who were in Criminal History Category I, was 72 months. U.S. Sentencing Comm'n, *2009 Sourcebook of Federal Sentencing Statistics* 30. In light of his mitigating factors, I believe that Taylor's sentence should fall slightly below this median.